[Planters Chemical & Oil Co. v. Stearnes.]

# Planters Chemical & Oil Co. *v.* Stearnes.

## *Assumpsit.*

(Devided November 7, 1914.  66 South. 699.)

1. *Evidence; Parol; Ambiguous Instrument.*—Where a note was ambiguous as to whether .the signers signed as individuals or as agents of the corporation, parol evidence was admissible to show in what capacity they signed.

2. *Same; Undisclosed Intention.*—Notwithstanding the note sued on was ambiguous as to the character in which the makers signed, whether individually or as agents of the corporation, this did not render admissible their testimony as to their undisclosed intention in signing.

3. *Same; Self-Serving Declaration.*—Conversations among the signers of a note in the absence of the payee was not binding on him, and were not admissible in evidence where they formed no part of the res gestæ of the execution of the note.

4. *Same; Negative.*—Except as it may tend to contradict plaintiff's evidence tending to show that the makers of the note signed the same individually, the testimony of the signers that they never heard any of the signers say that they signed the note individually, was not admissible.

5. *Same; Parol; Rules.*—Where parol evidence was admissible to show the capacity in which the makers of a note signed it, such evidence was governed by the general rules of evidence as to mere opinions, conclusions, motives, intentions and self-serving declarations.

6. *Principal and Agent; Liability of Agent.*—An agent signing a note as such, but not showing any intention to bind the principal, except by the use of mere words of description is personally liable.

7. *Agriculture; Fertilizer; Tags.*—In an action on a note given for fertilizer, where there was no evidence that it was not tagged when sold, it was error to admit evidence that it was not tagged, relating to a time long after the seller had lost control of it.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Assumpsit by the Planters Chemical & Oil Company against J. Bush Stearnes and others. Judgment for defendants and plaintiff appeals. Reversed and remanmed.

Transferred from Court of Appeals.

JOHN A. LUSK & SON, for appellant.

STREET & ISBELL, for appellee.

MAYFIELD, J.—Appellant sued appellees on a promissory note which was in words and figures as follows:

"$638.76                    Guntersville, Ala., May 20, 1910.

"On the first day of January, 1911, the Farmers' Union Warehouse & Mfg. Co. promise to pay Planters' Chemical & Oil Company, or order, the sum of six hundred thirty eight & 76/100 dollars, value received. And for the faithful payment of this note and attorney's fees, we hereby waive any and all rights we have under the laws of Alabama and of every state to claim any property exempt from levy and sale or choses in action from garnishment. Should this note be not paid at maturity and be placed in the hands of an attorney for collection we agree to pay the holder or assignee such reasonable sum as said attorney may charge as a fee for the collection thereof. It is agreed by the maker and indorser hereof that this note is negotiable and not subject to offsets, recoupments, discounts and equities of nonnegotiable paper. Protest and notice as well as suit against the maker and indorser or indorsers is hereby by each of us severally waived. It is further agreed by the maker and indorsers that upon failure to pay this note at maturity all other obligations owing by them jointly or severally to said payee may at once, at the option of said payee, become due.

"Payable at the Talladega National Bank, Talladega, Ala.

                    "J. B. Stearnes, Pres. [L. S.]
                    "J. H. Wood, Vice President. [L. S.]
                    "J. W. Nelms, Sec. & Treas.

"J. M. Dodd.

"W. S. Wiles.

' [Seal.] Farmers' Union Warehouse & Mfg. Co., Gunterville, Ala."

The defendants pleaded specially: (1) Non est factum; (2) that the consideration for the note was commercial fertilizer, and that it was not tagged; (3) that no statement was filed with the commissioner of agriculture as required by law; (4) that the bags were not properly branded; (5) that there was no consideration for the note; and (6) that the fertilizer did not contain the amounts or percentage of phosphoric acid, nitrogen, and potash, required by law.

It was not contended on the trial that the note was not actually signed by the defendants, but it was contended that they did not sign in their individual capacities, but signed only as officers of the Farmers' Union Warehouse & Manufacturing Company, and that the corporation alone was bound. Whether the plea of non est factum raised this issue as to the capacity in which the defendants signed is not contested on this appeal.

The note on its face is ambiguous as to the capacity in which these defendants signed. The promise, in the body of the contract, is that of the corporation, and not of the officers or parties signing; but in the conditions, as to the payment of attorney's fees, etc., and as to waiver of the rights of exemption, it appears that the signers are bound, and not the corporation, for the reason that the corporation, or the officers, as such, had no exemption rights to waive; and, if the officers were not made liable individually, what was the occasion or use of their waiving their rights to exemptions and promising to pay attorney's fees and costs? Parol evidence was therefore admissible to explain or clear this

apparent ambiguity. Such evidence, in cases of this kind, does not contradict or vary the writing, but explains it, and so aids in the ascertainment of the real contract between the parties. But, from the fact that parol evidence is admissible in such cases, it does not follow that the signers can testify as to their undisclosed intentions in signing the notes. Nor are conversations between or among the signers, when the payee or other parties to the note are not present, binding on the payee or holder; and they are therefore not admissible, unless they form a part of the res gestæ of the execution of the note. Any conversation by and between the parties to the instrument, at the time of, or prior to, the making of the note, which will tend to explain the ambiguity on the face of the note is admissible; but conversations between the makers, had in the absence of the payee or other parties interested in the making of the note or contract, are not admissible. The other parties must be bound by the declarations or acts, for them to be admissible; they must have had the opportunity to deny the statements or declarations, before they are bound thereby.

It was likewise not admissible for the signers of the notes to prove that they never heard any of the makers say that they signed the notes individually, except in so far as such testimony might tend to contradict evidence offered by the plaintiff to show that such makers signed the notes individually.

When negotiable instruments, like the one in question, on their face are free from ambiguity as to the capacity in which the signers or indorsers executed them, parol evidence is not admissible to make that fact uncertain; but when, as in this case, the note on its face is uncertain as to that fact, then parol evidence is admissible to make it certain. But such parol evi-

dence is governed by the general rules of evidence as to mere opinions, conclusions, motives, intentions, self-serving declarations, etc.

An agent signing a bill or note as agent, but not showing any intent to bind the principal, except by the use of mere words of description, is personally liable. The decisions, however, of the various courts, upon the effect of instruments signed by the agent as such without more to show the intent to bind a given principal, and as to competency of evidence to show the intent of the parties, are so conflicting that the Supreme Court of the United States (in the cast of *Falk v. Moebs,* 127 U. S. 597, 8 Sup. Ct. 1319, 32 L. Ed. 266) says: "It amounts almost to anarchy of the authorities."—See 1 Daniel on Negotiable Instruments, §§ 404, 408; Bigelow on Bills, p. 47; and the host of English and American authorities collected and reviewed in 4 English Ruling Cases, p. 278 et seq.

"A promissory note which reads: 'Four months after date we promise to pay to the order of George Moebs, Sec. & Treas., ten hundred sixty-one & 24/100 dollars, at Merchants' & Manufacturers' National Bank, value received . [Signed] Peninsular Cigar Co., Geo., Moebs, Sec. & Treas.'—and indorsed, 'Geo. Moebs, Sec. & Treas.,' is a note drawn by, payable to, and indorsed by the corporation, and without ambiguity in the indorsement; and evidence is not admissible to show that it was not the intention of the indorser in making the indorsement to bind himself personally."—*Falk v. Moebs, supra,* headnote.

"In *Keen v. Davis,* 1 Zab. (21 N. J. Law) 683, 47 Am. Dec. 182, a bill of exchange of the following purport, addressed to William Thompson, Esq., Somerville, N. J., and indorsed, 'The Elizabethtown & Somerville Railroad Company, by John Kean, President':

'$500.00.   Elizabethtown, Sept., 1841.   Six months after date, please pay to the order of the Elizabethtown & Somerville Railroad Company, five hundred dollars, value received, and charge as ordered.   Your obed't serv't, John Kean, President Elizabethtown & Somerville R. R. Co.'—was held to be ambiguous on its face, not clearly showing whether John Kean individually or the railroad company was the drawer, and proof was admitted, in the language of the court, 'not to aid in the construction of the instrument, but to prove whose instrument it is.'   To the same effect, see *Chadsey v. McCreery,* 27 Ill. 253; *Vater v. Lewis,* 36 Ind. 288, 10 Am. Rep. 29; *Hood v. Hallenbeck,* 7 Hun (N. Y.) 362.   *Mechanics' Bank v. Bank of Columbia,* 5 Wheat. 326, 5 L. Ed. 100, is also claimed to be an authority in favor of the position taken by the plaintiffs in error.   This was an action of assumpsit brought by the bank of Columbus against the Mechanics' Bank of Alexandria on the following check: 'No. 18.   Mechanics' Bank of Alexandria, June 25th, 1817.   Cashier of the Bank of Columbia: Pay to the order of P. H. Minor, Esq., ten thousand dollars ($10,000.00).   Wm. Paton, Jr.'   It was contended by the defendants that the check on its face was the individual check of Paton, and that evidence could not be received to show that it was in fact the check of the bank and signed by Paton as cashier.   On the other hand, the plaintiffs contended that the check upon its face did not purport to the private check of Paton, but the check of the bank, drawn by him as cashier, and that the presumption was that it was an official act.   The court, however, decided that the check was ambiguous upon its face; that the marks indicating it to be the check of the bank predominated; and that the only ground upon which it could be contended that the check was the pri-

vate check of Paton was that it had not below his name
the initials for cashier.   It was accordingly held that
in such case testimony was admissible to explain the
ambiguity and establish who was in fact the drawer of
the check."—*Falk v. Moebs, supra.*

In the leading English case of *Dutton v. Marsh,* L.
R. 6 Q. B. 361-365; s. c., 4 Eng. Rul. Cas. 278, it was
decided that words of description, importing that the
person signing the bill is an agent, without anything
to show clearly that he makes himself liable in that
character and not otherwise, do not exempt that per-
son from being charged as personally liable on the bill.

"Lord Ellenborough says in *Leadbitter v. Farrow,* 5
M. & S. 345, 349, 17 R. R. 345, 348: "Is it not a uni-
versal rule that a man who puts his name to a bill of
exchange thereby makes himself personally liable, un-
less he states upon the face of the bill that he subscribes
it for another, or by procuration of another, which are
words of exclusion?'   And, in all the cases in which
the defendant has been held not liable, there has been
some equivalent expression so as to exclude personal
liability.   On the other hand, the defendant has always
been held liable, unless some such words of exclusion
have been used, although it may be apparent on the
face of the instrument that he is signing as a director
or other officer of a company.   Thus in *Price v. Taylor,*
5 H. & N. 540, 29 L. J. Ex. 331, the defendants were
held liable, although they were described as the trus-
tees and secretary of a building society."—*Dutton v.
Marsh, supra.*

The same rules are announced by Mr. Randolph
(Com. Paper, vol 1, § 133 et seq.).   The author (sec-
tion 133) says: "The signer of a bill or note is no less
liable individually because he adds the word 'Agent'
to his name. And his individual liability is not affected

by his having ceased to be the agent before the maturity of the note, or by the fact of no demand having been made of the principal when disclosed. But it has been held, in New York, that a person signing a draft simply 'A. B., Agent,' and disclosing his principal to the payee, cannot be held individually; and that a principal who has not been named in giving such a note in his business may be held, and may be shown by parol to be the principal, although not indicated by anything in the note but the signature 'A. B., Agent.' In like manner the mere addition of an official title, without naming or otherwise indicating, either in the signature or in the body of the instrument, the person or corporation in whose behalf the instrument is given, leaves the maker or drawer in general individually liable. Such words are 'President,' 'Secretary.' 'Treasurer,' 'Trustee,' 'Supervisors.' "

There was no evidence tending to prove any of the special pleas, except as to the capacity in which the parties signed. There was no evidence to show that the fertilizer was not tagged, branded, etc., as the pleas alleged.

It was error, however, to allow testimony that three sacks of the fertilizer were not tagged at a time long after the plaintiff had lost control of it. The plaintiff's duty was wholly discharged in this respect if the fertilizer was tagged when it was sold to the defendants; it was not responsible for the losses of the tags thereafter. There was no attempt to prove that any of the sacks were not tagged when the plaintiff sold to the defendants and when the fertilizer was delivered on the cars at Talladega. The only proof offered on this subject was that three of the sacks had no tags when sold by the defendants to third persons, at Gun-

tersville. If there had been any proof to show that the fertilizer was not so tagged when sold and delivered by the plaintiff, this evidence of the absence of tags at Guntersville might be admissible as corroborative of the evidence that it was not tagged when delivered at Talladega; but, standing alone as it did, it was not admissible as original evidence that the goods were not tagged when sold by the plaintiff. If any original evidence had been subsequently introduced, it might have cured the error, by making the evidence admissible as corroborative; but no such evidence was ever offered, and the error was not cured.

It was ruled in *Kirby's Case,* 105 Ala. 529, 17 South. 38, that proof that the sacks were tagged prior to the time of sale was not admissible; that the law required that they be tagged at the time of sale. For a stronger reason, it is not admissible to prove that it was not tagged long after the sale, and after it had been shipped and handled several times, and resold, by the original vendees. The object and purpose of the statutes was explained in the case of *Steiner & Sons v. Ray,* 84 Ala. 93, 4 South. 172, 5 Am. St. Rep. 332.

It follows that the trial court erred to the injury of the plaintiff in allowing the defendant to prove conversations between themselves, in the absence of the plaintiff, or of any agent of the plaintiff, as to the capacity in which they intended to sign and did sign the note. These were self-serving declarations and were not admissible. Such statements might be admissible against the defendants, but not for them. A practice to admit such self-serving declarations would allow parties to make their evidence in advance and to preclude the other party to the contract without his knowledge or consent.

[Skelton v. Baker.]

It follows that the judgment must be reversed, and the cause remanded.

Reversed and remanded.

ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., concur.